UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS WINCHESTER,

    Plaintiff,

v.

SOUTHWEST MICHIGAN ASSET MANAGEMENT, LLC,

    Defendant.

Case No.

Hon.

## COMPLAINT AND JURY DEMAND

Plaintiff Marcus Winchester, by and through her counsel, for his Complaint against Defendant Southwest Michigan Asset Management, LLC, states as follows:

### INTRODUCTION

1. Defendants ensnared Plaintiff in a foreclosure rescue scam—a type of predatory lending— intended to capture, through deception and fraud, the equity in Plaintiff's home.

2. Defendant convinced Plaintiff to enter into a loan agreement in which Defendant charged approximately 120% annualized interest on a $10,000, and where Plaintiff would lose his home, valued at over $138,000, if he failed to make a single timely payment. The transaction illegally purported to waive Plaintiff's equity of redemption.

3. Defendant also provided none of the loan disclosures required by the federal Truth in Lending Act or the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act in connection with the transaction.

4. Exploiting Plaintiff's financial circumstances, Defendant deliberately defrauded Plaintiff and tricked him into conveying his home to Defendant for more than $120,000.00 less than the value of the home.

## THE PARTIES

5. Plaintiff Marcus Winchester is an individual residing in Niles, Berrien County, Michigan.

6. Defendant Southwest Michigan Asset Management, LLC, is a Michigan limited liability company with a registered office address in St. Joseph, Michigan.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1640 and supplemental jurisdiction pursuant to 28 U.S.C. § 1337.

8. Venue is appropriate in this Court because the conduct complained of took place within this District.

## FACTUAL ALLEGATIONS

9. Plaintiff purchased his home, located at 1638 Broadway Street, Niles Michigan ("the Home"), in 2015, for the sum of $138,500.00.

10. As part of the purchase of the Home, Plaintiff obtained an FHA-insured mortgage in the amount of $137,413.

11. Since 2015, Plaintiff has resided at the Property.

12. In 2023, Plaintiff fell behind in his mortgage payments, and was facing a foreclosure.

13. As of 2023, Plaintiff's home had a market value exceeding $138,000.00.

14.     In May 2023, Brandon Garrison, and agent of Defendant, contacted Plaintiff offering to help save him from foreclosure.

15.     Garrison sent several text messages to Plaintiff; in one text offering $20,000 in $100 bills, and in another text indicating that would "walk away with nothing" if the Home went to sheriff's sale.

16.     Defendant's agent was persistent in contacting Plaintiff, and eventually offered a and offered a $10,000 loan to help Plaintiff avoid foreclosure.

17.     On June 8, 2023, Garrison emailed Plaintiff three documents, and agreement, a quit claim deed, and a UPS label. Garrison instructed Plaintiff to sign and notarize the agreement and deed, and to send them to Defendant using the UPS label.

18.     The Agreement states, in part:

> The Grantor, Marcus Winchester, has agreed, pursuant to a Quit Claim Deed signed by Marcus Winchester to Southwest Michigan Asset Management, LLC (SWMAM, LLC) for the below reference property, that he shall reimburse the full amount of the consideration from the Quit Claim Deed plus an additional One Thousand and 00/100 Dollars ($1,000.00) on or before July 8, 2023. If Grantor fails to reimburse SWMAM the full amount of Eleven Thousand and 00/100 Dollars ($11,000.00) by that date, the Quit Claim Deed will become operative and recorded. Marcus Winchester hereby acknowledges that SWMAM, pursuant to the Quit Claim Deed, shall have the full and exclusive right of ownership to the Property. SWMAM acknowledges that Marcus Winchester can keep the consideration in the Quit Claim Deed if said funds are not reimbursed and the Deed becomes operative.
>
> All terms must be met and executed by the close of business at 5:00 p.m. EST no later than July 8, 2023. Funds must be paid in the form of Cashier's Check which can be distributed to 111 Hawthorne Ave., St. Joseph, MI 49085 or can be mailed to P.O. Box 81, St. Joseph, MI 49085.

19.     The Quit Claim Deed states, in part, that Plaintiff, quit claims his interest in the Home to Defendant for the sum of $10,000.00.

3

20.     Plaintiff executed the Agreement and Quit Claim Deed on June 8, 2023, and had them both notarized. He sent them to Defendant using the UPS label that Defendant had provided.

21.     Plaintiff agreed to the arrangement because he was expecting a tax refund that would cover the loan. He did not receive the tax refund until August.

22.     Defendant recorded the Quit Claim Deed on July 11, 2023.

23.     Defendant also mailed Plaintiff a Notice to Quit to Recover Possession of Property on July 11, 2023, stating that Plaintiff must vacate the Home by August 12, 2023.

24.     Plaintiff received his tax refund in August 2023. On August 23, 2023, Plaintiff sent Defendant a cashier's check in the amount of $11,000.00.

25.     On August 23, 2023, Defendant filed an eviction lawsuit against Plaintiff relating to the Home. Case No. 23-008664-LT. The matter was scheduled for an initial hearing on September 13, 2023.

26.     At the initial hearing, that case was dismissed without prejudice at the request of the attorney for Southwest Michigan Asset Management, LLC.

27.     Under Michigan law, the transaction was in substance a loan in the nature of an equitable mortgage. "It is well settled that the adverse financial condition of the grantor, coupled with the inadequacy of the purchase price for the property, is sufficient to establish a deed absolute on its face to be a mortgage." *Koenig v Van Reken*, 89 Mich App 102 (1979).

28.     On November 28, 2023, Legal Aid of Western Michigan sent a letter to Defendant on behalf of Plaintiff. The letter states that Plaintiff rescinds the transaction

4

pursuant to 15 USC § 1635, and demands that Defendant cancel any security interest it has in the Home within 20 days of the receipt of the letter.

## COUNT I: TRUTH IN LENDING ACT

29. Defendant took no action in response to the letter.

30. Plaintiff incorporates all previous allegations by reference.

31. Defendant is a creditor as that term is defined in TILA because it originated a loan to Plaintiff and Defendant regularly extends consumer credit payable by agreement in more than four installments and/or requiring payment of a finance charge.

32. Plaintiff is a consumer within the meaning of the TILA.

33. Defendant violated TILA, 15 U.S.C. §§ 1635, 1638, 1639, 1639b, and 1639c, by failing to provide required loan disclosures, failing to secure the license for mortgage loan origination required by Michigan law, and failing to make a reasonable and good faith determination that Plaintiff had a reasonable ability to repay the loan.

34. Because no rescission disclosure was provided to Plaintiff, he retains the right to rescind the transaction under 15 U.S.C. § 1635.

35. WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant and providing the following relief: actual and statutory damages; a declaration that Defendant's practices violated TILA; costs and attorney's fees; and rescission of the loan transaction between Plaintiff and Defendants.

## COUNT II: MICHIGAN CONSUMER PROTECTION ACT

36.     Plaintiff incorporates the previous allegations by reference.

37.     The Michigan Consumer Protection Act ("MCPA"), MCL 445.90e *et seq.*, prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MCL 445.903(1).

38.     Enumerated examples of unfair, unconscionable, or deceptive practices include "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented," MCL 445.903(g); "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction," MCL 445.903(n); "[c]ausing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction," MCL 445.903(o); "[g]ross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits," MCL 445.903(y); "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold," MCL 445.903(z); and "[c]ausing coercion and duress as a result of the time and nature of a sales presentation," MCL 445.903(aa).

39.     Defendants violated each subsection of the MCPA quoted above.

40.     Plaintiff has suffered damages as a result of Defendants' violations of the MCPA, consisting of the loss of equity in his home totaling over $138,000.00.

41.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor, providing the following relief: actual damages; declaring that Defendant's conduct

6

violated the MCPA; reasonable attorney fees; and such further legal and equitable relief as the Court deems just.

### COUNT III: QUIET TITLE / EQUITABLE MORTGAGE

42. Plaintiff incorporates the previous allegations by reference.

43. The Quit Claim Deed in favor of Defendant is, by operation of law, in fact merely an equitable mortgage that did not transfer title to Plaintiff's home.

44. The Quit Claim Deed is part of a transaction in which Defendant illegally induced Plaintiff to waive his equity of redemption.

45. MCL 600.2932 empowers the Court to quiet title to Plaintiff's home in Plaintiff's name.

46. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor quieting title to Plaintiff's home and providing such further legal and equitable relief as the Court deems just.

### COUNT IV: FRAUD IN THE INDUCEMENT

47. Plaintiff incorporates the previous allegations by reference.

48. Defendant represented to Plaintiff that he would lose his home if he did not enter into a transaction with Defendant.

49. Defendant also represented to Plaintiff that the transaction was a loan, knowing the documents they pressed him included a transfer of Plaintiff's property to Defendant.

50. Statements made to Plaintiff were not true when they were made.

51. Plaintiff relied on Defendant's statements in entering into the transaction.

52. Plaintiff suffered damages as a result of Defendants' fraud, including loss of over $120,000.00 in equity in her home.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor providing for damages in an amount to be proven at trial, and such futher legal and equitable relief as the Court deems just.

## COUNT V:

## MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

53. Plaintiff incorporates the previous allegations by reference.

54. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, requires creditors to make extensive disclosures in connection with consumer mortgage loans, including the amount financed, finance charge, annual percentage rate, payment schedule, and security interests.

55. TILA further requires periodic disclosures after loan origination.

56. Defendant is a "creditor" as that term is used in TILA because it regularly extends consumer credit and the "loan" payments by Plaintiff were to be made to Abundant Life.

57. Defendant provided none of the initial or periodic disclosures required under TILA.

58. Defendant is ae "mortgage lender" and "licensee" as those terms are defined in the Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA") because they "directly or indirectly … make[] offers to make mortgage loans." MCL 445.1651a(q).

59. Defendant is not licensed as required by the MBLSLA, MCL 445.1652(1).

60. The MBLSLA provides a remedy to consumers where a mortgage lender "fail[s] to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act." MCL 445.1672(a).

8

61. The MBLSLA further prohibits "fraud, deceit or material misrepresentation in connection with any transaction governed by this act." MCL 445.1672(2).

62. The MBLSLA further prohibits "intentionally or due to gross or wanton negligence, repeatedly fail to provide borrowers material disclosures of information as required by law." MCL 445.1672(c).

63. The MBLSLA further prohibits the making of false, misleading, or deceptive advertisements regarding mortgage loans. MCL 445.1672a.

64. Violations of TILA by a creditor and mortgage lender entitle a consumer to the remedies provided in the MBLSLA. *Macholz v Carrington Mortgage Servs, LLC*, 499 FSupp3d 434, 454 (WD Mich 2020).

65. Defendant violated the MBLSLA by violating TILA, committing fraud or material misrepresentation, intentionally failing to provide material disclosures, and falsely advertising the nature of its "services" and proposed transactions.

66. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor, providing the following relief: actual and statutory damages in an amount to be determined at trial; declaring that Defendant's practices violated the MBLSLA; enjoining Defendant's practices in violation of the MBLSLA; awarding reasonable attorney fees; and providing such further legal and equitable relief as the Court deems just.

## COUNT VI: UNJUST ENRICHMENT

67. Plaintiff incorporates the previous allegations by reference.

68. Defendant received a benefit from Plaintiff in the form of a Quit Claim Deed to property worth more than $138,000.00.

69.     Defendant's unlawful and inequitable conduct renders the benefit Defendants received from Plaintiff unjust.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor providing for the disgorgement by Defendants of the unjust benefits they received from Plaintiff, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, for all of the above reasons, the Plaintiff respectfully requests that the Court grant the following relief:

(A)     Award actual damages, including economic and non-economic damages, in an amount to be proven at trial;

(B)     Award statutory damages;

(C)     Injunctive relief as described above;

(D)     To quiet title in the Home to Plaintiff;

(E)     Grant Plaintiff an award of attorney fees, costs, and pre-judgment and post-judgment interest incurred in bringing this action; and

(F)     Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial.

                                  Respectfully submitted,

Dated:  March 13, 2024                   *John P. Smith*
                                         John P. Smith (P71368)
                                         Legal Aid of Western Michigan
                                         Attorney for Plaintiff
                                         25 Division Ave. S, Suite 300
                                         Grand Rapids, MI 49503